## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN JONES, | : | CIVIL ACTION NO. 2:19-cv-06192-NIQA |
| Plaintiff | : | |
| v. | : | JURY TRIAL DEMANDED |
| THE NORTH PENN YOUNG MEN'S CHRISTIAN ASSOCIATION; INDIAN VALLEY FAMILY Y.M.C.A., and AMERICAN RED CROSS, | : | |
| Defendants. | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

### I.    STATEMENT OF THE NATURE OF THE ACTION AND JURISDICTION

This is a personal injury matter.  On December 31, 2019, Defendant American National Red Cross ("Red Cross") removed the action from the Montgomery County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.  The Red Cross removed the action pursuant to 28 U.S.C. §§1441 and 1446 by virtue of 36 U.S.C. § 300105, which grants the American Red Cross the power to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States."

### II.   BRIEF STATEMENT OF THE FACTS OF THE CASE

The incident occurred on April 26, 2015 when Plaintiff was just fifteen (15) years old.  At the time of his injury, Plaintiff Steven Jones was a participant in an American Red Cross ("Red Cross") lifeguard certification course conducted at a swimming pool at the Indian Valley YMCA.

The course was conducted using an American Red Cross curriculum and an American Red Cross instruction manual. The Red Cross licensed the curriculum to the YMCA. Plaintiff was one of at least twenty (20) participants under the supervision of two (2) instructors, Julie Hanley and Brian Krizovesky. The instructors were trained by the Red Cross. The incident occurred on the first day and within the first hour of the course.

The Indian Valley swimming pool is twenty-five (25) yards long and has six lanes. The center of each lane is designated by a line painted on the bottom of the pool. The pool is also equipped with surface lane ropes to separate the lanes, but they were not being used at the time of the incident. Mr. Krizovesky testified that he did not know whether surface lane ropes were available on the day of the course. Ms. Hanley testified that she was aware she had the ability to put the lane ropes in the pool, that it was not her standard practice to use them.

After a short classroom session, the participants were led to the swimming pool to participate in a Red Cross required prerequisite swimming skills test. The test required participants to swim 300 yards in a pool without stopping. The participants were divided into two groups on the long side of the pool. Each member of the first group was instructed to stand behind a member of the first group, forming rows two participants deep. The first group was instructed to enter the pool and begin swimming width-wise across the pool. Once the first group reached approximately a quarter of the way to the other side of the pool, the instructors directed Plaintiff and the rest of the second group to enter the pool to begin their laps. No lane ropes were used to delineate separate swim lanes and they were swimming perpendicular to the bottom lane markers. This created a situation where swimmers were swimming in opposing directions without the guidance of either lane ropes or bottom markers. Swim goggles were also not provided, and participants had not been instructed to bring them.

During the prerequisite swim, Plaintiff collided head-on with another participant.  He immediately experienced head pain and stopped swimming to ensure the other swimmer was okay. After he completed his assigned number of laps, he got out of the pool, lost consciousness, and fell to the pool deck.  He was transported by ambulance to Grand View Hospital and was diagnosed with head trauma.

There was conflicting testimony between instructors as to how the swim test was conducted that day.  Mr. Krizovesky testified that it was his typical practice to divide the swimmers into two groups and instruct the first group to complete their laps then exit the pool.  After the first group had exited the pool, he would instruct the second group to enter the pool and complete their laps. Mr. Krizovesky could not recall the manner in which the swim was conducted the day of the incident.  Ms. Hanley stated that she divided the swimmers into two groups based on the self-reported swimming ability.  She then instructed the "faster" group to enter the pool and swim lengthwise.  As soon as a participant from the faster group finished, she would replace that swimmer with a participant from the second group.  Both instructors confirmed that surface lanes were not used during the swim test.

Ms. Hanley acknowledged she was aware of the possibility of collisions from this arrangement, but it had never happened before so it was "not at the top of [her] agenda".  She also testified that she did not give participants specific warnings about collisions or instruct them how to avoid coming into contact with another participant.  The pool where the course was conducted had only six marked lanes running lengthwise in the pool.  Regardless of whether Mr. Jones, Ms. Hanley, or Mr. Krizovesky correctly recalled the manner in which the prerequisite swim test was conducted, all of them agreed that the swimmers were divided into two groups of at least ten swimmers each.  They also agreed that no lane ropes were in use.  If the instructors were correct

about having the participants swim lengthwise, with only six available lanes, there would have been more than one swimmer to a lane swimming without the guidance of lane ropes.

In addition, there was no lifeguard on duty at the time of the collision. Ms. Hanley admitted that a lifeguard should have been present. One of a lifeguard's duties would have been to foresee collisions and act to prevent them. This could have been accomplished by stopping swimmers who were off course or warning them with a whistle. Ms. Hanley and Mr. Krizovesky testified that they were stationed on opposite sides of the pool. If ten swimmers were in the pool at a time, each instructor would have been responsible to supervise only five swimmers. Mr. Krizovesky did not see the collision. Ms. Hanley saw the collision but did nothing to warn the swimmers before it happened.

Plaintiff's liability expert, Gerald Dworkin, states in his report that when there are too many swimmers for each to have their own lane, the only safe way to conduct the test is to use a technique known as a "circle swim". He also states his opinion that a circle swim is only safe under two conditions; 1) swimmers must receive instruction in how to avoid collisions during the circle swim; and 2) lane ropes must be used to guide the swimmers. The instructors in this case did neither. Mr. Dworkin criticized ARC for failing to include instructions in its course manual for safely conducting the prerequisite swim. He also opined that the failure to have a lifeguard on duty was negligent and violated several government and industry standards.

## III.  DAMAGES

Steven Jones was fifteen years old and in his freshman year of high school at the time of the incident. As a result of the incident, Plaintiff was diagnosed with acute head injury, post-concussive syndrome, and post-traumatic headaches. In addition, Plaintiff was diagnosed with

vestibular-ocular tracking convergence insufficiency (an objective sign of a concussion) and balance deficits. Plaintiff required prolonged treatment with several neurologists, cognitive therapy, and medication management. Plaintiff missed over one month of school in his freshman year due to his persistent, pervasive symptoms, which included headaches, dizziness, noise and light sensitivity, poor concentration, memory deficits, blurred vision, and decreased balance. Plaintiff presently continues to experience these symptoms which interfere with his activities of daily living.

Steven has undergone neuropsychological testing by Dr. Thomas Swirsky-Sacchetti. This testing revealed relative weaknesses in visual memory, rapid visual searching, sequencing (a neural process in learning), and set shifting (the ability to move back and forth between tasks). Plaintiff has retained Dr. Brian Kucer, the Director of Brain Injury Rehabilitation Unit at Magee Rehab to testify at trial. It is his opinion that the cognitive deficits are related to the swimming pool incident, that his ongoing symptoms are permanent, and they will impair his performance and career choices.

Plaintiff seeks compensatory damages for his pain and suffering as well as his loss of life's pleasures. In addition, a lien in the amount of $3,752.34 has been asserted by Optum for medical benefits paid on behalf of Plaintiff.

## IV.   WITNESSES

Steven Jones (liability and damages)
629 Hammersmyth Court
Harleysville, PA 19438

Kathaleen Jones (damages)
629 Hammersmyth Court
Harleysville, PA 19438

Wayne Jones (damages)
629 Hammersmyth Court
Harleysville, PA 19438

Gerald Dworkin (liability)
3 Mills Road, PO Box 3006
Kennebunkport, ME 04046

Brian Kucer, M.D. (damages)
1513 Race Street
Philadelphia, PA 19102

Thomas Swirsky-Sacchetti, Ph.D. (damages)
230 South Broad Street, Suite 1005
Philadelphia, PA 19102

Julie Hanley (as on cross)
c/o Marshall, Dennehey, Warner, Coleman, & Goggin
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406

Brian Krizovesky (as on cross)
c/o Marshall, Dennehey, Warner, Coleman, & Goggin
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406

Anne Leslie (as on cross)
c/o Marshall, Dennehey, Warner, Coleman, & Goggin
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406

Corporate Designee(s) of the Indian Valley Family YMCA (as on cross)
c/o Marshall, Dennehey, Warner, Coleman, & Goggin
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406

Corporate Designee(s) of the North Penn Young Men's Christian Association (as on cross)
c/o Marshall, Dennehey, Warner, Coleman, & Goggin
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406

Corporate Designee(s) of the American National Red Cross (as on cross)
c/o Rebar Kelly
470 Norristown Road, Suite 201
Blue Bell, PA 19422

Representative or records custodian of North Wales Family Medicine

Representative or records custodian of Penn Neurologic Associates

Representative or records custodian of Harleysville Area Emergency Medical Services

Representative or records custodian of Grandview Sports Medicine

Representative or records custodian of Grandview Hospital

Representative or records custodian of Sports Medicine and Performance Center at the Children's Hospital of Philadelphia

Representative or records custodian of Optum

Representative or records custodian of United Healthcare

Representative or records custodian of Penn State University

Representative or records custodian of Souderton Area High School

Representative or records custodian of Florida Institute of Technology

Representative or records custodian of Walmart Pharmacy

Any and all fact witnesses mentioned during the course of discovery

Any person who verified the pleadings and/or discovery of any party

Any and all witnesses for rebuttal and/or impeachment purposes

Plaintiff reserves the right to call any other witness listed in Defendants' Pretrial Statements, and Plaintiff reserves the right to amend and/or supplement this list up to and including the time of trial.

## V.    EXHIBITS

P-1    American Red Cross Lifeguarding Instructor's Manual

P-2    American Red Cross Licensed Training Provider Resource Guide

P-3    Licensed Training Provider Agreement

P-4    American Red Cross Lifeguarding Manual

7

P-5    American Red Cross Guide for Training Lifeguarding Instructors

P-6    Lifeguarding Certification Course Invoice

P-7    Redwoods Group YMCA Incident Reporting Form

P-8    North Penn YMCA Spring 2015 Program Guide

P-9    Certificates of Brian Krizovesky

P-10   Class Transcript of Brian Krizovesky

P-11   Enrollment Records of Brian Krizovesky

P-12   Performance Reviews of Brian Krizovesky

P-13   Certificates of Julie Hanley

P-14   Class Transcript of Julie Hanley

P-15   Enrollment Records of Julie Hanley

P-16   Medical Records of North Wales Family Medicine

P-17   Medical Records of Penn Neurologic Associates

P-18   Medical Records of Harleysville Area Emergency Medical Services

P-19   Medical Records of Grandview Sports Medicine

P-20   Medical Records of Grandview Hospital

P-21   Medical Records of Sports Medicine and Performance Center at the Children's Hospital of Philadelphia

P-22   Medical Records of Walmart Pharmacy

P-23   Records of Optum

P-24   Records of United Healthcare

P-25   Records of Penn State University

P-26   Records of Souderton Area High School

P-27   Records of Florida Institute of Technology

P-28   Harleysville Area Emergency Medical Services Invoice

P-29   Deposition of Steven Jones

P-30   Deposition of Kathaleen Jones

P-31   Deposition of Brian Krizovesky

P-32   Deposition of Julie Hanley

P-33   Deposition of Ann Leslie

P-34   Demonstrative evidence/anatomical drawing of the brain

P-35   Demonstrative evidence/drawing of swim formation

P-36   Diagram of a circle swim

P-37   Photographs of the Indian Valley YMCA Swimming Pool

P-38   Expert Report of Gerald Dworkin

P-39   Curriculum Vitae of Gerald Dworkin

P-40   Expert Report of Brian Kucer, M.D.

P-41   Curriculum Vitae of Brian Kucer, M.D.

P-42   Expert Report of Thomas Swirsky-Sacchetti, Ph.D.

P-43   Curriculum Vitae of Thomas Swirsky-Sacchetti, Ph.D.

P-44   Plaintiff's Responses and Objections to the Interrogatories of Defendant American National Red Cross

P-45   Plaintiff's Responses and Objections to the Request for Production of Documents of Defendant American National Red Cross

P-46   Defendant American National Red Cross's Responses and Objections to the Interrogatories of Plaintiff

P-47   Defendant American National Red Cross's Responses and Objections to the Request for Production of Documents of Plaintiff

P-48    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Interrogatories of Plaintiff

P-49    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Request for Production of Documents of Plaintiff

P-50    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Interrogatories of Defendant American National Red Cross

P-51    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Request for Production of Documents of Defendant American National Red Cross

P-52    Defendant American National Red Cross's Responses and Objections to the Supplemental Interrogatories of Plaintiff

P-53    Defendant American National Red Cross's Responses and Objections to the Supplemental Request for Production of Documents of Plaintiff

P-54    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Supplemental Interrogatories of Plaintiff

P-55    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Supplemental Request for Production of Documents of Plaintiff

P-56    Defendant American National Red Cross's Responses and Objections to the Second Supplemental Interrogatories of Plaintiff

P-57    Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA's Responses and Objections to the Second Supplemental Interrogatories of Plaintiff

P-58    Initial Disclosures of Plaintiff

P-59    Initial Disclosures of Defendant American National Red Cross

P-60    Initial Disclosures of Defendants North Penn Young Men's Christian Association and the Indian Valley Family YMCA

## VI.    ESTIMATED LENGTH OF TRIAL

Plaintiff anticipates that this trial will last for 3-4 days.

## VII.   LEGAL ISSUES AND STIPULATIONS

Plaintiff will stipulate to the authenticity and admissibility of the medical records.  Plaintiff will also stipulate to the amount of the Optum lien.

MORRIS WILSON, P.C.

Date:  12/21/2020          By: _Megan Knoll_

Robert F. Morris, Esquire
Megan G. Knoll, Esquire
MORRIS WILSON, P.C.
161 Washington Street, Suite 900
Conshohocken, PA 19428
*Attorneys for Plaintiff Steven Jones*